Jacob A. Gillick, Esq., SBN 312336
jgillick@phglawgroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Objector Lance Z. Ricotta

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>WILLIAM WAGNER,<br><br>                    Defendants. | Case No. 22cv1791 WQH AHG<br><br>**OPPOSITION TO PETITION TO ENFORCE THE UNITED STATES FEDERAL AVIATION ADMINISTRATION'S SUBPOENA TO WILLIAM WAGNER** |

Objector Lance Ricotta ("Lance"), as an interested party to the matter, hereby submits this opposition to the Petition to Enforce The United States Federal Aviation's Subpoena to William Wagner [Dkt. 1].

## I.

## **INTRODUCTION**

Lance was forced to file two Motions to Quash the subpoenas served on Mr. Wagner and Wagner Aeronautical Inc. Instead of scheduling a hearing addressing the motions, the instant petition was filed with the hopes that Lance would not be informed. Lance has a very vested interest in protecting his business, reputation, and clients and therefore submits this second Opposition and requests a hearing be held.

By way of background, Brothers Lance Ricotta ("Lance") and Thomas Ricotta ("Tom") have been embattled in contentious litigation for years regarding the ownership of Lancair Corporation ("Lancair"), which operates an FBO at Brown Field. Specifically, Lance has been able to prove that Tom was stealing money from Lancair and had misappropriated its shares by amending their mother's estate documents after she underwent a partial lobotomy.

Seeing all of his bad acts coming to a head, Tom has resorted to filing false claims with different authorities in order to have his brother arrested. Lance has done nothing wrong, but the FAA keeps harassing him because of Tom's false reporting. Tom admits to this scheme in videos attached to this motion where he tells Lance, in front of Lance's teenage son that Lance is going to lose on everything because the FAA is going to "crawl up your ass."

A specific effect of this harassment campaign has been a loss of business for Lance along with a fear of being wrongfully accused of something he did not do. Lance has worked with the subpoenaed party, William Wagner ("Wagner"), for over 25 years. Now, given this subpoena, Wagner has indicated that he and his entities will no longer work with Lance. This makes sense as Wagner and/or his

company, Wagner Aeronautical Inc., are concerned about being dragged into Tom's scheme and losing certain FAA certifications as punishment for not having any damaging information on Lance.  If Lance does not stand up for himself, and his clients, the FAA will ruin everything he has been working to build.

As described herein, the subpoena is improperly vague, overbroad, oppressive, and procedurally deficient.  On those grounds, Lance requests the petition be denied.

## II.
## RELEVANT BACKGROUND FACTS

On March 15, 2022, Brian K. Kahn, Esq., of the Federal Aviation Administration ("FAA") Enforcement Division, Midwest Team, sent a deposition subpoena to William Wagner ("Wagner"), with Wagner Aeronautical, Inc., set for April 7, 2022.  A true and correct copy of the subpoenas are attached to the Declaration of Jacob A. Gillick ("Gillick Decl.") as Exhibit 1.  The only information provided in the subpoena as to the topic being discussed was: "transportation by air provided to you by Lance Ricotta."  (*Ibid.*) Wagner and Petitioner Lance Ricotta ("Lance") have worked with each other for over 25 years, which includes the sale of two aircrafts and Lance acting as Wagner's Chief Pilot. Lance submitted a Motion to Quash this subpoena to which the FAA did not respond nor schedule a hearing.  The FAA then re-served the exact same subpoena again on Wagner with a production date of May 26, 2022.  Lance filed submitted a second Motion to Quash this subpoena but again the FAA did not respond or schedule a hearing.

It is believed that the current investigation by the FAA into Lance started on or around November 1, 2018.  It was re-started on November 30, 2021.  The re-started investigation is now over 120 days old – well beyond the 75-day limit for such investigations. (See FAA National Policy, Chapter 4, subdivision 4(e).)  In addition, when it comes to the suspension or revocation of a license or certificate,

the stale complaint rule provides that an FAA complaint will be dismissed if the offenses alleged occurred more than six months prior to the Administrator's advising a respondent of the reasons for the proposed action.  Given the long history of investigation, and in light of the absence of any compliant notification or action, this investigation is untimely and any and all enforcement activity should have ceased.

In addition to this significant delay, the individual investigators have displayed a biased and prejudiced approach to their work.  This investigation finds its origins in complaints lodged by Tom, Lance's brother, an individual with whom Lance has been in litigation with for almost five years.  There is a direct correlation between Tom's complaints and "information" to the FAA regarding Lance and negative and harmful evidence uncovered in the underlying litigation.  Sensing the impending loss on the merits, Tom has focused on bankrupting his brother and is using FAA investigators to do his bidding.  The fact that FAA investigators have taken the information proffered by Tom at face value is surprising; but what is even more shocking are the tactics they have employed.

By way of background, Lance was the original founder of Lancair Corporation ("Lancair"), the FBO at Brown Field.  Shortly after purchasing the original leasehold, Lance hired his brother Tom as the day-to-day manager of the operation and awarded him with 10% of the Lancair corporate stock.

In connection with Lance's guilty plea to a logbook violation, he was counseled to place his stock in his mother's name.  Years later, at a time when Mrs. Ricotta was recovering from traumatic brain injury, lying in a hospital bed unable to speak or communicate, she, according to Tom, transferred 80% of her stock to him.  This transfer was hidden from Lance as Tom, the trustee, assured Lance he was still a 50% owner and continued to represent that the bi-annual payments were for Lance's 50% ownership interest in the FBO.

///

The transfer remained hidden until Lance, years after his mother death, asked for a simple accounting. But when he did, his brother refused by citing the alleged transfer documents with a threat to enforce them. (Attached to the Gillick Decl. as Exhibit 2 please find the probate petition filed in this matter.) In the ensuing litigation, Mrs. Ricotta's treating physician testified that there was no way Mrs. Ricotta could have understood, comprehended, or agreed to the transfer outlined in the documents allegedly signed by her. This deposition, which took place on March 10, 2020, was a game changer.

We suspect that this date will correspond with the volume of complaints being lodged by Tom who, at that time, was well aware that he stands to be disinherited. (Attached to the Gillick Decl. as Exhibit 3 please find excerpts from the deposition of Dr. Spier, Mrs. Ricotta's treating physician.)

As part of the litigation, Judge Meyer has enjoined Tom from selling the FBO as he had been threatening. (Attached to the Gillick Decl. as Exhibit 4 is the order from the Honorable John Meyer.) This injunction was based, in part, on the judge's finding that Lance was, more likely than not, to prevail on the merits of his claims that the documents allegedly signed by Mrs. Ricotta at the behest of Tom were procured illegally and that Tom had been misappropriating millions of dollars from Lancair.

Since November 30, 2021, FAA investigators have conducted the following ramp checks of Lance:

1. Gulfstream, tail number N270MC, San Diego, California, November 1, 2018;
2. Gulfstream, tail number N270MC, Miami, Florida, November 1, 2018;
3. Grumman Mallard, tail number N777PV, San Diego, California, July 11, 2019;

///

|   |     |                                                                                         |
|---|-----|-----------------------------------------------------------------------------------------|
| 1 | 4.  | Lear, tail number N260GD, Paine Field Washington, November 30, 2021;                    |
| 2 | 5.  | Gulfstream, tail number N511PK, Teterboro, New Jersey, November 30, 2021;               |
| 3 | 6.  | Gulfstream, tail number N511PK, San Francisco International, December 1, 2021;          |
| 4 | 7.  | Lear, tail number N260GD, Chino, California, February 8, 2022;                          |
| 5 | 8.  | Astra, tail number N565KE, Carlsbad, California, January 26, 2022;                      |
| 6 | 9.  | Astra, tail number N565KE, Carlsbad, California, February 10, 2022;                     |
| 7 | 10. | Astra, tail number N448GR, Ft. Worth, Texas, March 11, 2022;                            |
| 8 | 11. | Ramp Surveillance, King Air N888HJ, Scottsdale, Arizona, March 15, 2022; and            |
| 9 | 12. | Other ramp inspections/surveillance suspected to be discovered with FOI Request.        |

These "enforcement" activities have been and continue to be immeasurably injurious to Lance, his entities, and now his business contacts. During these ramp checks, the prospective buyers of the aircraft are ushered out of the plane and aggressively questioned by investigators as to the particulars of the flight. On every occasion, the prospective buyers have confirmed the legal, non-chartered, nature of the flight. Nevertheless, the harassment has resulted in the loss of various buyers and the cancellation of various contracts – the specific goal Tom had in mind when he lodged the unfounded complaints in the first place. Attached hereto as "Exhibit 5[1]" is a true and correct copy of videos where Tom Ricotta tells Lance that he is going to lose the lawsuit because "the Feds are going to crawl up

///

---

[1] Exhibit 5 is contained in the Dropbox Link
https://www.dropbox.com/s/42md0i1grcjkzin/Video%20Mar%2015%2C%2011%2007%2039%20AM.mov?dl=0

[his] ass." Thomas made these comments in front of Lance's son, as seen in the video.

Mention must also be made of the activities of FAA Investigator David Baron during the ramp surveillance that took place on March 15, 2022, in Scottsdale, Arizona. On that date, Investigator Baron arrived plain clothed in an unmarked vehicle. He sat in his car videotaping the activities of Lance Ricotta and his passengers. When he was approached by Lance and the FBO ramp security, he accelerated careless and recklessly around taxiing aircrafts and a United States Customs Ramp vehicle -- nearly making contact with Lance and the security guards. Mr. Baron drove off at a high rate of speed trying to escape, and when he got the gate, he ran into it. The gate prevented his escape. The FBO personnel contacted the Scottsdale Police. Mr. Baron refused to cooperate with ramp staff and Airport Operation Officers and refused to identify himself. He then tried to escape one more time by hitting Lance Ricotta with his vehicle.

When the police arrived, they cited Mr. Baron for trespass. This type of activity is in stark contravention of his duties as outlined in U.S. Department of Transportation Order 2150.3B, which establishes the policies and procedures for investigations conducted by the FAA. That Order, in particular Chapter 2, Sections 3(e) provides that FAA investigators must "accurately and completely report all facts and conduct their investigations in an unbiased and focused manner. A violation report without all the facts only leads to delays that compromise the objectives of fair and responsive enforcement."

The ramp checks, subpoenas, and dangerous, unskilled, and unprofessional actions of Mr. Baron led inexorably to the conclusion that the FAA's alleged commitment to an unbiased and fair investigation are not being met. (A video excerpt form that interaction is being sent along with this letter as Exhibit 5.) Tom and Lance have had no contact for over five years, the fact that the FAA is still taking his complaints at face-value is concerning. Lance is now required to

1  submit this Motion to Quash in order to protect Wagner from getting caught up in
2  Tom's bad acts.  Wagner has indicated that he will likely no longer continue
3  business with Lance.  This is exactly what Tom is looking for.  Further, Lance is
4  concerned that if he does not quash the subpoena, the FAA will punish Wagner for
5  not having any damaging information by threatening any of the FAA certifications
6  he and/or his entity may have.
7      Lance has lost multiple opportunities due to the false allegations made by
8  Tom and the reckless investigation being conducted by the FAA.  This subpoena
9  is just another example of harassment tactics as it is woefully deficient and
10 unenforceable.

## III.
## ARGUMENT

13     Pursuant to Title 14 of the Code of Federal Regulations ("CFR"), section
14 13.228(b), "[a] party, or any person upon whom a subpoena has been served, may
15 file in the FAA Hearing Docket a motion to quash or modify the subpoena."  In
16 seeking to quash a subpoena, the "[m]ovant must describe, in detail, the basis for
17 the motion to quash or modify the subpoena including, but not limited to, a
18 statement that the testimony, document, or tangible evidence is not relevant to the
19 proceeding, that the subpoena is not reasonable tailored to the scope of the
20 proceeding, or that the subpoena is unreasonable and oppressive.  A motion to
21 quash or modify the subpoena will stay the effect of the subpoena pending a
22 decision by the administrative law judge on the motion."  (*Ibid.*)  As described
23 below, the subpoena is not reasonably tailored and is irrelevant, oppressive, and
24 procedurally deficient.

25     **A.    The Subpoenas Were Not Reasonably Tailored**
26     When issuing a subpoena, it "must show its general relevance and
27 reasonable scope."  (14 CFR 13.228(a).)  One would expect that a copy of the
28 Complaint against Lance would be included with the subpoena to narrow the

scope and comply with 13.228(a).  However, this did not occur as neither Wagner nor Lance have ever received a copy of any Complaint.

Pursuant to 49 USCS 46101(a), "the FAA shall investigate [a] complaint if a reasonable ground appears." When the FAA investigates a complaint, "[t]he FAA will send a copy of a complaint to. . . the subject(s) of the complaint by certified mail." (See 14 CFR 13.5.)  It is likely that no complaint exists because the FAA has already found no reasonable grounds to investigate Wagner about Lance.  The subpoena served on Wagner states that "the FAA will depose you regarding transportation by air provided to you by Lance Ricotta."  (Attached to the Gillick Decl. as Exhibit 1.)  That is the totality of information offered.  No attempt is made to choose a specific timeframe during the 25-year relationship or describe what flights the FAA is interested in.

Finally, the subpoena is to William Wagner *and* Wagner Aeronautical, Inc. (*Ibid.*)  It is unclear what capacity Wagner must appear and what transactions or flights he will be asked about.  The vague explanation, improperly overbroad scope, and failure to provide a copy of the Complaint make this subpoena improper.  Therefore, Petitioner requests it be quashed.

### B.    No Explanation of Relevance is Offered

A subpoena may be quashed if the "testimony is not relevant to the proceeding."  (14 CFR 13.228(b).)  As described above, no explanation of the matter has been provided to the deponent or Lance, who is the subject of the investigation.  Therefore, there is no way to determine if the testimony is "relevant" to the action.  Given the lack of relevancy, Lance requests the subpoena be quashed.

/ / /

/ / /

/ / /

/ / /

### C. The Subpoenas Were Unreasonable and Oppressive

Lance has already lost out on any future business opportunities with Wagner. Now, Lance is concerned that the FAA will punish Wagner for not having any damaging information about Lance. Specifically, and based on information and belief, Wagner and Wagner Aeronautical, Inc., have special FAA certifications which allow them to operate and offer the services they do. Lance is concerned that the FAA will threaten these certifications.

The FAA has gone to great lengths to harass Lance at the behest of Tom, despite Tom and Lance not having contact for five years. Lance's livelihood has already been negatively impacted by Tom's revenge mission through the FAA. Lance therefore requests Wagner be protected from any further harassment procedures through the subpoena.

Finally, and as described above, complying with the subpoenas, which spans an unknown number of flights and business deals over 25 years, is oppressive. Given the oppressive nature of the subpoena, Lance requests it be quashed.

### D. Service of the Subpoenas were Improper

Pursuant to 14 CFR 13.57 "[s]erving a subpoena requires delivering a copy to the named person." No such copy was delivered directly to Wagner. Instead, they were mailed via FedEx to a business address for Wagner Aeronautical, Inc. (See Gillick Decl. Exhibit 1.) Therefore, service was deficient.

///
///
///
///
///
///
///

## IV.

## CONCLUSION

Lance seeks to put a stop to Tom Ricotta's revenge mission through the FAA. As described above, the subpoena is improperly vague, overbroad, irrelevant, oppressive, and was improperly served. Lance therefore respectfully requests the subpoena be quashed.

Dated:  December 12, 2022          **PHG LAW GROUP**

                                  By:  s/ Jacob A. Gillick
                                       Jacob A. Gillick, Esq.
                                       Attorneys for Objector Lance Z. Ricotta